UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EHC, LLC, | ) | Case No. 15 B 40866 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

**Amended Memorandum Opinion**
**(Dkt. Nos. 266, 268, 270 and 271)**

**Background**

This Opinion (and related orders) resolves four matters: Motion for Sanctions as to Attorney Nikola Duric (Docket Number 266); Attorney Lawrence Karlin's Application for Compensation (Docket Number 268); Motion to Bar Late Filing of a Response (Docket Number 270) and a Motion to Disqualify (Docket Number 271).

Steven DeGraff, a lawyer, is the managing member of 36 Holdings LLC ("36 Holdings"). 36 Holdings bought loans of Debtor EHC, LLC ("EHC") and its related entity, LJBV, Ltd. ("LJBV"), from Lakeside Bank on April 13, 2015. That transaction closed on April 30, 2015. The Debtor owed $5.4 million on those obligations; the amount due grew to $5.9 million. The loans were cross-collateralized by (1) an office building located at 36 W. Randolph Street in Chicago owned by EHC and John Wallace, (2) an industrial building owned by Chicago Trust Company in a land trust with EHC's co-obligor and related entity, LJBV, as the beneficiary and (3) unimproved lots located in Door County, Wisconsin.

36 Holdings filed a foreclosure case in the Circuit Court of Cook County, Illinois on June 22, 2015, Case No. 2015 CH 09675, which includes allegations that EHC, LJBV, Robert Voegel and Marlene Voegel signed a promissory note dated April 15, 2010 in the original sum of

$4,785,000. The debt was modified on February 10, 2012; the maturity date was extended to February 15, 2014; the interest rate was reduced from 5.75% to 4.5%; and the principal balance was reduced to $3,429,000. A second promissory note was signed on February 10, 2012 for the sum of $1,272,254. EHC and LJBV executed mortgages on February 10, 2012 to secure the second note.

On June 26, 2015, 36 Holdings filed a motion in the foreclosure case for the appointment of a receiver. Mr. Duric appeared in the foreclosure case on behalf of the obligors/defendants and filed successive motions for substitution of judge on their behalf pursuant to 735 ILCS 5/2-1001(a)(2). A receiver was appointed on October 22, 2015. 36 Holdings complains about this. However, this concern will be disregarded because Illinois law allows each party in civil actions to substitute a judge. This court does not find that effort offensive.

Within hours of the entry of the receiver's appointment Mr. Duric filed bankruptcy case 15-35952 on behalf of EHC and bankruptcy case 15-35961 on behalf of LJBV. The petitions were signed only by Mr. Duric; neither was sworn to by a representative of the debtors. Although EHC and LJBV are related entities in that both are owned by Marlene Voegel and they are co-obligors on the 36 Holdings loans, LJBV did not disclose EHC as an affiliate also filing a bankruptcy case. Neither debtor filed a list of creditors as required by Federal Rule of Bankruptcy Procedure 1007. Neither debtor filed required schedules or statements of financial affairs. Neither debtor filed a motion seeking leave of court to use cash collateral; neither debtor disclosed compensation paid to counsel. Neither debtor filed an application to retain counsel. Mr. Duric did not seek extensions of time to file the required documents.

Mr. Duric testified that he had not filed a bankruptcy case before filing the 15-35952 and

15-35961 cases. However, he said that he had represented creditors in bankruptcy matters for Fidelity National Title Company. Marlene Voegel's husband, Robert Voegel, testified that it was his understanding from talking to Mr. Duric that he had filed numerous bankruptcy cases. Mr. Duric denied telling Mr. Voegel that. This court believes Mr. Voegel.

In EHC's 15-35952 case both 36 Holdings and the U.S. Trustee filed motions to dismiss. *See* 15-35952, Docket Numbers 8 and 9.

On November 25, 2015, this court dismissed EHC's 15-35952 case. The order noted Mr. Duric's insistence throughout these cases that the state court was wrong to appoint a certain individual to serve as the receiver. That order noted that the receiver issue could be litigated in state court. Bankruptcy courts, as federal trial courts, do not sit as courts of review of state court orders. *Rooker v. Fidelity Trust Co.,* 44 S.Ct. 149, 150 (1923); *District of Columbia Court of Appeals v. Feldman,* 103 S.Ct. 1303, 1311 (1983).

The dismissal order also noted that the debtor had not obtained leave to use cash collateral regarding rent proceeds; a motion for such was filed but did not have a hearing date as of November 25, 2015.

After the November 25, 2015 EHC dismissal 36 Holdings filed a motion in the foreclosure case for approval of the receiver's bond. On December 1, 2015 when that motion was to be heard EHC filed its second bankruptcy case, 15-40866.

That petition did not disclose the previous case of affiliate LJBV in answer to question 10 and erroneously stated the case number of the previous EHC bankruptcy case in answer to question 9 as 15-25952, when EHC's first case was 15-35952. Case 15-40866, Docket Number 1, p. 2. This lack of information may have lead to that case being assigned to Judge Barnes of

this court. That case was reassigned on December 16, 2015. Our Court's Administrative Procedures provide: "[i]f a case is related, as defined by Local Bankruptcy Rule 1015-1, to a case previously pending under Chapter 11 or any presently pending case, it shall be assigned to the judge of the previously assigned case." U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division, Administrative Order 15-07. Was this effort intended to manipulate the court's assignment system?

On January 22, 2016, this court dismissed the related LJBV-1 case number 15-35961 for cause under 11 U.S.C. § 1112(b) noting that "[i]f the debtor's only purpose for filing the case is to delay (or defeat) a single judgment creditor, and the case has little or no ability to benefit the creditor body as a whole, the debtor has not filed the Chapter 11 in good faith." Case 15-35961, Docket Number 52, p. 7.

That seven-page order also notes that the court asked Mr. Duric why the debtor defaulted on its obligation to make mortgage payments at a hearing on January 21, 2016; the question was not answered. *Id.* at 2. The court recalls, however, that owner Marlene Voegel acknowledged being in default but was disappointed that her friends at Lakeside Bank sought to enforce the bank's rights.

Mr. Duric denied that the EHC-2 case was filed to delay the foreclosure case. He argued that it was filed so that the 36 W. Randolph St. property could be sold in bankruptcy to pay the Debtor's creditors and to prevent the receiver, Donald Shapiro, from interfering with the Debtor's efforts to sell the property. A November 4, 2015 contract between EHC and 3L Real Estate, LLC was entered into evidence. The Purchase Price was $6 million and was subject to bankruptcy court approval. The closing was set for December 15, 2015. The first EHC case,

EHC-1, was pending when the 3L Purchase Agreement was received by EHC (the first EHC case was dismissed on November 25, 2015).  Mr. Duric did not file a motion to sell the property while that first EHC case was pending.  Mr. Duric and his clients were not serious about selling the property.

Mr. Duric filed EHC's second bankruptcy case on December 1, 2015, case number 15-40866.  On January 20, 2016, Mr. Duric filed a motion to sell the property pursuant to a January 12, 2016 agreement with EL Funding Partnership LLC for $6 million.  Case Number 15-40866, Docket Number 56.  On January 27, 2016, Attorneys Paul M. Bauch, Kenneth Michaels and Carolina Sales filed appearances herein on behalf of the Debtor.

On October 26, 2015, Mr. Duric sent an email to counsel for 36 Holdings requesting a payoff statement.  A payoff statement was sent stating that the payoff amount was $5,744,637.52.  The Schedule D in EHC-2, the 15-40866 case, stated that only $4,371,559.74 was due.  Case Number 15-40866, Docket Number 9, page 9, filed by Mr. Duric on December 3, 2015.  Mr. Duric knew better by December 3, 2015.

Review of the dockets in cases 15-35952 and 15-40866 show that while Mr. Duric represented EHC in both EHC-1 (15-35952) and EHC-2 (15-40866) no Monthly Operating Reports were filed.  Those documents are designed to disclose information about debtors' receipts and disbursements.

A November 16, 2015 motion to use cash collateral in EHC-1, 15-35952, Docket Number 21, included monthly budget information that disclosed that the Debtor took in $39,226 in rental revenue monthly. Those funds should not have been used except upon court order (or with secured creditor consent) since the secured creditor 36 Holdings LLC had an interest in them.

*See* 11 U.S. C. § 363(c)(2)[1]. We know from the testimony of debtor's employee, Hilda Sanchez, however, that the Debtor routinely used those funds without leave of court. She said at the Section 341 Creditors Meeting that she gave bills to Mr. Duric in December, that she was not told not to write checks and that Mr. Duric was working on getting an order from the judge to be able to use the account. He told her to give him the information but to go ahead and cover expenses. Exhibit 78 of 36 Holdings LLC's Witness and Exhibit List for July 28 and 29, 2016 Hearings ("Witness and Exhibit List").

The Amended Statement of Financial Affairs filed in EHC-2 on February 10, 2016 disclosed that the Debtor paid ALSJ, Inc. approximately $109,128.41 during the 90-day pre-petition period. The principal of ALSJ, Inc., Mr. Andy Lee, testified that Marlene Voegel had signed certain promissory notes payable to ALSJ, Inc. on an individual basis in the amount of $282,700. The funds received were in payment of her personal debt to ALSJ, Inc.

This Court denied Mr. Duric's application to be employed to represent the Debtor in EHC-2 on January 21, 2016. His motion for use of cash collateral was also denied on January 21, 2016 in EHC-2. Case 15-40866, Docket Numbers 62 and 63. The budget attached to the cash collateral motion showed monthly gross rental income of $39,226 for EHC.

**Unauthorized Use of Cash Collateral**

On February 9, 2016, EHC's successor attorney, Paul M. Bauch, filed a Summary of Cash Receipts and Disbursements for Filing Period Ending December 31, 2015. Case Number 15-

---

[1]"The trustee may not use, sell or lease cash collateral...unless
    (A) each entity that has an interest in such cash collateral consents; or
    (B) the court, after notice and a hearing, authorizes such use, sale, or
        lease in accordance with the provisions of this section."

40866, Docket Number 78.

Mr. Bauch sought use of cash collateral on March 3, 2016; that motion was granted on March 8, 2016.

The budget attached to the cash collateral motion showed that the monthly gross revenue of EHC was $39,773. Its expenses, not including payments for taxes, adequate protection to the lender and an escrow were $19,680, with $20,093 in net revenues. Even though EHC had collected the November rents, its cash on hand increased by only $1,266.00. The Statement of Financial Affairs filed by Mr. Duric in EHC-2 (EHC-2, Docket Number 3) on December 1, 2015 was identical in many respects to the Amended Statement of Financial Affairs filed in EHC-1 (Docket Number 17, pp. 2-12 on November 16, 2015), listing only the payments and disbursements by the Debtor through October 22, 2015. It did not account for rents collected by EHC in November and December of 2015.

From December 1, 2015 to December 31, 2015, without a cash collateral order, EHC spent $33,450.27, including $3,539.85 for payroll to its employees, $6,832.72 for utilities, $11,661.28 for insurance and $7,587.57 for union benefits. *See* EHC-2, Docket Number 78 - Summary of Cash Receipts and Cash Disbursements.

**Sale of Real Estate**

While Mr. Duric did not file a motion asking the court to approve a $6,000,000 purchase and sale agreement with 3L Real Estate LLC ("3L"), as required by 11 U.S.C. § 363(b)(1)[2], after 3L suspended the contract, Mr. Duric filed an adversary complaint against Mr. DeGraff alleging

---

[2]11 U.S.C. § 363(b)(1) provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..."

that he tortiously interfered with the contract by telling Joseph Slezak, who represented the prospective purchaser, that the $6,000,000 purchase price was not adequate to pay 36 Holdings all that was owed under the mortgage and that he was slated to become the owner of a valuable commercial office building. 36 Holdings was sued too. *See* Adversary Proceeding 15-907, filed on December 22, 2015, Exhibit F.

The purchaser's attorney sent the Debtor a December 8, 2015 letter (before the adversary proceeding was filed) rejecting modifications proposed by the Debtor, including that 3L pay all seller title charges and that 3L be substituted as a defendant in the foreclosure case. That attorney's December 15, 2015 letter noted that 3L reserved its rights under the purchase agreement until zoning, landmark and fire issues got settled. She did not mention the allegedly tortious statements of Mr. DeGraff. *See* Exhibits 32 and 33 of the Witness and Exhibit List.

**Default Interest**

Mr. Duric testified that he filed the two EHC cases to contest the imposition of default interest. However, Mr. Duric scheduled the amount due 36 Holdings as $4,371,559.74, more than the $4,259,561.99 amount 36 Holdings showed as due in an October 26, 2015 payoff statement, which included default interest. *See* EHC-1, 15-35952, Docket Number 19 and EHC-2, 15-40866, Docket Number 9 and Payoff Statement in October 26, 2015 email from Attorney L. Karlin, Exhibit Number 81 in the Witness and Exhibit List.

Mr. Duric filed a Schedule D in the LJBV case scheduling its secured indebtedness at $1,322,749.43, more than the $1,281,157.17 amount in the October 26, 2015 payoff statement which included default interest. *See* 15-35961, Docket Number 20 and Exhibit 81.

Mr. Duric's testimony that he filed these cases to challenge the imposition of default

-8-

interest is not credible. EHC did not contest the imposition of default interest until February 10, 2016 when Mr. Duric's successor filed an Amended Schedule D reducing the amount due to 36 Holdings to $5,317,055. *See* 15-40866, Docket Number 80 - Amended Schedule D.

Mr. Duric is that rare attorney who when confronted with the deficiencies in his clients' position, made no effort to cure them. In most cases when an opponent seeks dismissal or sanctions for failure to file or correct something the accused party comes into court and explains the problem or asks for time to cure the deficiency. Mr. Duric acted insulted that his conduct was challenged and acted as if he was above the law, much like his client Marlene Voegel did when she expressed disappointment that her friends at Lakeside Bank were trying to enforce their rights in the face of EHC's default.

**Finding that Cases Were Filed to Delay Creditor**

This court found that the bankruptcy cases were filed solely to delay the foreclosure case and to multiply 36 Holdings' efforts to enforce its rights and remedies. EHC's schedules were incomplete, Monthly Operating Reports were not filed and neither creditor consent nor court authorization was obtained to use cash collateral. Mr. Duric could have cared less about proceeding properly in bankruptcy because he sought only to delay and harass EHC's primary creditor, 36 Holdings, and to resist the receiver. His failure to file a motion to sell the building under section 363 of the Bankruptcy Code evidences this.

**Good Faith Inquiry**

This court found that these cases were not filed in good faith, measuring the conduct of Mr. Duric by the standards articulated in *In re Tekena USA, LLC*, 419 B.R. 341, 346-51 (Bankr. N.D. Ill. 2009).

The debtor has few unsecured creditors factor - EHC had few unsecured creditors. This case represents an effort to frustrate and delay the efforts of one secured creditor.

The pre-petition conduct of the debtor was improper factor - there was scant information presented about the Debtor's pre-petition conduct; this factor did not weigh against Mr. Duric.

The bankruptcy case allows the debtor to evade court orders factor- the debtor sought little more than to avoid the state court's appointment of a receiver. This factor weighed against Mr. Duric.

There are few debts to nonmoving creditors factor - this was true for the Debtor. This factor showed a lack of good faith.

The bankruptcy case was filed right after the foreclosure case was initiated - this factor weighed against Mr. Duric as the Debtor's unauthorized use of cash collateral/rent proceeds to pay its principal's debt to ALSJ, Inc., rather than to 36 Holdings, evidenced Mr. Duric's serious disregard for bankruptcy procedure.

The real estate in issue is the debtor's major asset - this factor weighed against Mr. Duric.

The debtor has no ongoing business or employees factor -  the debtor had three employees; this factor did not weigh against Mr. Duric. Its business as a lessor was questionable, however, since it allowed insider tenants to pay what they could afford rather than what the market commanded for the spaces leased. As the Debtor's agent and attorney, this factor weighed against Mr. Duric.

There is no possibility of reorganization factor -  this was difficult to discern since the real estate was not put up for sale. The second motion to sell filed in EHC-2 became moot when that case was dismissed on April 12, 2016 on the Motion of 36 Holdings to Dismiss for Cause.

The debtor's income is not sufficient to operate factor - the Debtor's income was used to pay Marlene Voegel's debt to ALSJ, Inc., not to operate the Debtor. This weighed against Mr. Duric.

Reorganization herein essentially involved the resolution of a two-party dispute - this factor weighed against Mr. Duric. EHC sought to avoid one creditor while not pursuing any benefit for its creditor body as a whole.

The debtor filed solely to create an automatic stay. Mr. Duric filed the cases for EHC and LJBV solely to obtain an automatic stay and did little else to go forward in these cases.

**Sanctions Under Federal Rule of Bankruptcy Procedure 9011**

Rule 9011 provides in relevant part:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances -
>     (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . .
> (c) Sanctions.
>     (1)(A) ... If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

Fed. R. Bankr. P. 9011(b) and (c).

This court found that Mr. Duric violated Rule 9011 when he presented the petitions for bankruptcy relief herein solely to avoid the appointment of the receiver in the state court foreclosure case, which improper purpose caused delay and needless increase in the cost of litigation. *Frederick v. Easty,* 2015 WL 603884, at * 9 (N.D. Ill. February 11, 2015). Note the January 22, 2016 dismissal order in *In re LJBV, Ltd.,* 15-35961 where this court found that that

-11-

case was filed to control who obtained the building upon sale in an effort to make sure that 36 Holdings did not obtain title. This is not an appropriate use of the bankruptcy system. Our system is designed to preserve enterprise value and to give deserving debtors a fresh start. Case 15-35961, Docket Number 52, p. 6.

That order also discusses the debtor's reduction of the rent of an insider from $25,000 a month to $500 a month. *Id.* at 6.

**Resolution of Motion for Sanctions**

On April 22, 2016, Attorney Lawrence M. Karlin filed a Motion for Sanctions on behalf of secured creditor 36 Holdings against the Debtor, its principals and its attorneys Paul M. Bauch and Nikola Duric.

After a contested hearing the Motion for Sanctions was denied as to all respondents except Mr. Duric. The conduct of the other respondents did not approach the level of Mr. Duric's; they were not sanctioned.

The court acknowledged that EHC, LJBV and Mr. Duric are not the only debtors and/or debtor's attorneys who behave this way in Chapter 11 cases. The difference is that secured creditor 36 Holdings is the rare creditor that pursues its rights.

The court allowed Mr. Karlin to file Proposed Findings of Fact and Conclusions of Law on or before September 23, 2016. Mr. Karlin filed Proposed Findings of Fact and Conclusions of Law herein on September 21, 2016. Docket Number 252. Mr. Duric was allowed to file Proposed Findings of Fact and Conclusions of Law on or before October 17, 2016. Mr. Duric did not file Proposed Findings of Fact and Conclusions of Law.

On October 17, 2016, the date on which his Proposed Findings of Fact and Conclusions of Law were due, Mr. Duric filed a Motion to Extend Time, Docket Number 256, in which he noted a September 21, 2016 conversation he had with Mr. Karlin suggesting a compromise of the Motion for Sanctions. Mr. Karlin and an attorney for another party, Adrian Vuckovich,

discussed settlement. This matter did not settle. Mr. Duric asked to extend the due date to retain separate bankruptcy counsel to represent him in this matter because he thought that this matter would be resolved. The Motion to Extend Time did not explain why Mr. Duric could not comply by October 17, 2016. Mr. Duric's motion was amended on October 26, 2016 and set for hearing on November 3, 2016, seventeen days after his pleading was due. Mr. Duric could have prepared the pleading during those extra seventeen days.

This court asked on November 3, 2016 if the Proposed Findings of Fact and Conclusions of Law would be filed that day. Mr. Duric was not prepared to file Proposed Findings of Fact and Conclusions of Law on that date. The Motion to Extend was denied and the Motion for Sanctions was taken under advisement. Mr. Duric and his new attorney, Gregory Jordan, had made no effort to move this matter along. The Motion to Extend was Mr. Duric's latest effort to delay the resolution of this bankruptcy case and the foreclosure case.

The court also denied Mr. Duric's request to schedule a pretrial conference herein. Based on this court's recall of Mr. Duric's conduct herein, that request appeared to be little more than another ploy to delay this matter.

**Entry of Order Granting Motion for Sanctions**

On January 6, 2017, this court entered an order resolving the Motion for Sanctions following a contested hearing (without the benefit of Proposed Findings of Fact and Conclusions of Law from Mr Duric). Docket Numbers 265 and 266. Attorney Nicola Duric was found to have violated Federal Rule of Bankruptcy Procedure 9011 by presenting petitions for bankruptcy relief solely to avoid and delay a state court mortgage foreclosure case, causing delay and needless increase in the cost of litigation. The court ordered Mr. Duric to pay the attorney's fees

and costs incurred by secured creditor 36 Holdings in defending its interests in the bankruptcy cases. 36 Holdings was allowed to submit a petition outlining the fees and costs it incurred in pursuing its rights in the EHC and LJBV cases on or before February 11, 2017. Mr. Duric was given until March 22, 2017 to respond to that petition.

**Mr. Karlin's Motion for Compensation**

Mr. Karlin filed his Application for Compensation on January 26, 2017, about 15 days before the due date. Mr. Duric did not file a response to it. The Application for Compensation will be granted.

**Motion to Bar Late Filing**

The Motion to Bar Late Filing complains that Mr. Duric had until March 22, 2017 to file a response to the Application for Compensation but did not do so. Federal Rule of Bankruptcy Procedure 9006(b)(1) provides that to expand the period in which an act is required, a request for enlargement has to be filed before the expiration of the period. No motion for an extension of time to respond to the compensation request was filed before it was due. The Motion to Bar Late Filing will be granted.

**Motion to Disqualify**

On March 27, 2017, (after the March 22, 2017 date on which he was allowed to file a response to the Application for Compensation) Mr. Duric filed a Motion to Disqualify this court where he alleges that at a December 17, 2015 hearing in the *In re LJBV* case, 15-35961, this court denied his religious freedom when a hearing date of January 7, 2016 was set. He also alleges that the January 6, 2017 date (a year later) on which the sanctions opinion was released, was also his religious holiday. Mr. Duric's disqualification pleading then addresses issues that

should have been timely addressed previously. He mentions that the other targets of the sanctions motion were not sanctioned, a matter that could have been timely addressed when he was allowed to file Proposed Findings of Fact and Conclusions of Law by October 17, 2016. He says that disqualification is warranted because he was the only party sanctioned, the denial of a continuance to a date other than his religious holiday, the timing of the issuance of the January 6, 2017 opinion and the language used in the opinion. He does not point out the language in the January 6, 2017 order that he finds objectionable.

28 U.S.C. § 455 provides that any justice or judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. This statute asks whether a reasonable person perceives a significant risk that a judge will resolve the case on a basis other than the merits. This standard examines "how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." *In re Sharif,* 2016 WL 5373199, *6 (N.D. Ill. September 26, 2016).

The Supreme Court has noted that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. U.S.,* 510 U.S. 540, 555 (1994). In addition, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

A court need not disqualify itself from hearing matters involving parties or attorneys it has previously sanctioned. In *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.,* 299 F.3d 635, 639-41 (7th Cir. 2002) the Seventh Circuit affirmed the denial of a motion for recusal where the

district court issued a contempt order against an attorney after the attorney disclosed confidential information in publicly filed documents in violation of a protective order. After an unsuccessful appeal and a second contempt order the attorney sought the district judge's recusal; that motion was denied.

The Seventh Circuit held that federal judges must recuse themselves from cases where they have a personal bias or prejudice concerning a party and that "bias must be proven by compelling evidence; and the issue is whether 'a reasonable person would be convinced the judge was biased'". (citation omitted). *Id.*, at 640. The bias must be based on personal animus or malice the judge harbors, none of which Mr. Duric has shown herein. The Circuit said that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge" unless what is said is based on an opinion that derives from an extrajudicial source. *Id.*

The Seventh Circuit also said that a judge's rulings alone almost never constitute valid grounds for recusal:

> We agree with the district court that Messina has failed to establish any basis for recusal. Messina states that Judge Zagel's decisions against him repeatedly demonstrate an "unremitting bias." However, Messina makes no attempt to establish any bias stemming from a personal relationship or prior litigation. Instead, he dwells on Judge Zagel's rulings during the litigation, which absent extraordinary circumstances, are not grounds for recusal. (citation omitted). Although Judge Zagel criticized Messina's conduct several times throughout the litigation, these incidents were in direct response to Messina's repeated disregard for the confidentiality orders. His efforts at courtroom administration and enforcing compliance with a court order do not amount to an inability to render fair judgments.

*Id.*

Each alleged basis for disqualification is a ruling by this court, which the Supreme Court

-16-

and the Seventh Circuit have held almost never constitutes a valid basis for a partiality motion: that he alone was sanctioned even though the creditor's motion sought sanctions against others, that a matter was continued to a religious holiday (even though Mr. Duric did not tell the court that his faith celebrated Christmas Eve or Christmas on a particular date) and that the court's ruling on the sanctions motion was issued on January 6, 2017 a religious holiday. How does the release date imperil his religious faith?

Mr. Duric's disqualification motion includes his affidavit in which he states that he is an Eastern Orthodox Christian, that on December 17, 2015 he requested a continuance of a matter in case 15-35961 to a date other than January 7, 2016 because that day was a religious holiday when this court is alleged to have responded "You can send someone else". Exhibit 1 to Motion to Disqualify, Docket Number 271. He also states that his religion celebrates Christmas Eve on January 6 and Christmas on January 7. The court was not told this on December 17, 2015.

Exhibit 2 to the disqualification motion is an unsworn, undated statement from a priest. It states that Mr. Duric is a founding member of an Orthodox Church which was established twenty years ago in October 2017, which is hard to believe since we are now only in April of 2017. The priest also states that the Orthodox Church observes the January 7th/Nativity/Christmas and that on January 6th and 7th the priorities for an Orthodox Christian are clearly understood and never thought to be optional.[3]

Exhibit 3 to the disqualification motion appears to be an excerpt from Wikipedia which will not be given any weight in the resolution of these matters.

---

[3]Why did Mr. Duric wait from December 17, 2015 to March 27, 2017 to request disqualification? Laches may apply; he has waited too long to complain.

While reviewing the docket after the March 28, 2017 date on which the court took the above four matters under advisement the court discovered that Mr. Duric filed an Amended Motion to Disqualify on April 18, 2017 to which he attached as an exhibit the December 17, 2015 transcript. Case 15-40866, Docket Numbers 275 and 276. The next day Mr. Karlin responded. Case 15-40866, Docket Number 277.

Mr. Karlin points out that the initial Motion to Disqualify states that the court told Mr. Duric to send someone else to the January 7, 2016 hearing. Mr. Duric's affidavit stated that he was a solo practitioner and that he had no other attorneys in his office:

> As a solo practitioner, I do not have other attorneys in my office, I could not "send someone else" as Judge Cox stated on the record. Accordingly, I appeared in court on January 7, 2016.

Paragraph 10 of Affidavit of Nikola Duric, Motion to Disqualify, Exhibit 1, Case 15-40866, Docket No. 272, p. 2.

In contrast, the transcript shows that when Mr. Duric objected to the January 7 court date the court said he could send somebody else. Mr. Duric said "I will do that. Thank you." Case 15-40866, Docket No. 276, December 17, 2015 Transcript, p. 8. Mr. Duric said he would send someone else. Now he may be claiming that he had no one else to send.

Oddly, only one page of the transcript has been attached.

He did not say that he was a solo practitioner without an attorney to send over as his Motion to Disqualify Affidavit states. This raises an issue of credibility.

While Mr. Duric complains about January 7, 2016 the court notes that his Motion and Application to Employ Duric Law Offices in the EHC, 15-40866 case was on the court call on January 7, 2016 at 9:30 a.m. If January 7, 2016 was so offensive he would not have set the

compensation pleading for that date. There is no Notice of Motion on the docket. The Motion was filed on December 22, 2015 at Docket Number 28. A docket entry indicates that the filer was notified that "Notice of Motion Missing, filer notified to file." Review of the docket shows that no Notice of Motion was docketed. On January 7, 2016 the Motion and Application to Employ were continued to January 14, 2016.

Mr. Duric's disqualification motion will be denied. It does not show bias or unfairness towards him. This court has ruled against Mr. Duric based on his conduct, not on bias or impartiality.

**Conclusion**

This Amended Memorandum Opinion reflects this court's Findings of Fact and Conclusions of Law. The four orders entered on April 21, 2017 stand.

Date: April 25, 2017              **ENTERED:**

                                  _____
                                  **Jacqueline P. Cox**
                                  **United States Bankruptcy Judge**